Case number 20-1313. United States of America versus Xavier Jamel Orange, also known as Xavier Louis Jamel, also known as Xavier J. Louis, also known as Xavier J. Orange, appellants. Ms. Wright for the appellant, Mr. Hahn for the appellate. Ms. Wright, please proceed whenever you're ready. Thank you. Good morning. May it please the court, Lisa Wright for Xavier Orange. I'd like to reserve two minutes for rebuttal. Sentencing counsel here was ineffective in failing to raise meritorious challenges to two enhancements that together more than doubled Mr. Orange's guideline range, the crime of violence enhancement and the extended magazine enhancement. As to the crime of violence enhancement, that was applied to Mr. Orange's prior attempted assault with a dangerous weapon or attempted ADW. In 2018, this court in Brown relied on the attempt commentary in finding that attempted ADW was a crime of violence. But by the time of Mr. Orange's sentencing, the Supreme Court had decided Kaiser. And after Kaiser, it was clear that the attempt commentary could not be relied on to expand the clear text of the crime of violence guideline. And indeed, the government does not contains any genuine ambiguity that would justify deference to the sentencing commission's commentary. So looking just at the plain text of the guideline, it's clear that DC attempted ADW does not quote have as an element the use attempted use or threatened use of physical force against the person of another. Because we're starting with text of the relevant guideline, the relevant guideline is 4B2.1, correct? Yes. And that guideline says, use the meaning given in not just 4B1.2, but 4B1.2 and the application note. And the application note to 4B1.2 expressly includes attempts. So which section of 2K2.1, is that referring to an application note in 2K2.1? I'm sorry. Yes. Yes. The application note one. Yes. It says crime of violence. Right. Which is undefined in 2K. Right. As the meaning given that term in the text of 4B1.2 and the application note of 4B1.2. So even if you were correct that in a 4B1.2 case, the application note in 4B1.2 goes beyond the text of 4B1.2, this application note says, use the other one, which picks up attempt. Well, I mean, if it's simply a cross-reference, so I guess I would say that to the extent the cross-reference commentary is basically invalid under Kaiser, it can't be incorporated to another commentary to 2K2.1. I mean, it's still just commentary and it's just really invalid under the circumstances. I mean, I don't think the government's even claiming now that the commentary, you know, is effective. And of course, the same language is interpreted in ACCA and other statutes without any commentary. So it does seem like it's surplusage to some degree. That's fair. Both sides treat 2K2.1 as co-extensive with 4B1.2. And maybe that's a perfectly good answer for you. I'm just not sure it's right, but go ahead. Okay. Ms. Wright, can I also ask you, you know, how should we think about Kaiser in the context of the guidelines? Because the guidelines are themselves not binding and the commentary is not binding. So we're looking at a non-binding interpretation of a non-binding guidelines. So does Kaiser even apply in that context? I think so. I mean, Congress does approve the guidelines and the commission, you know, passes them through a formal process. And then the commentary, I mean, Stinson said that the commentary was entitled to some deference. And Stinson has basically been restricted now by Kaiser. So I guess Stinson treated the guidelines like other regulations, more or less. I understand it's not exactly the same, but, and certainly in Winstead, you know, Stinson was treated as applicable to the guidelines. Well, but in Winstead, that was at a time when the guidelines were still treated as binding, right? Because it wasn't. Yeah, I think so. Oh, well, I mean, the case was only a few years ago. I guess the, I'm not sure of the year. I think it was post Booker that that sounds occurred. I'm not, I think it was like 2011 or 12 that he was sentenced. So that was post Booker. So, I mean, our argument looking at the text is very simple that, because even a completed assault only requires, you know, either an attempt to use force or a threat to use the force with, you know, through use of a weapon that- This case all comes down, does it not, to the argument that an attempt to threaten exceeds the crime of violence? That's right. That's the key issue in the case. It is. I mean, I think technically an attempt to attempt to use force is also a step removed, but I think it's a lot clearer when you think of it in terms of attempt to threaten that our point is much clearer. And it's just, it's just one step removed from what is called for. And the government has now acknowledged that a defendant can satisfy the elements of attempted ADW by attempting to threaten use of force against a person, for example, by getting a weapon and traveling to get the victim with the intention of committing an ADW by threat, or that is by, you know, intent to frighten ADW. The government's argument is your position is really artificial. Never in a million years would anybody be prosecuted for an attempt to threaten. That was their argument, I think, but I, unless I'm misinterpreting the letter they sent yesterday, I think they're acknowledging now that such crimes do exist and do equate to assault with a dangerous weapon. I'm sorry, I didn't see the letter yesterday. It's just a simple one paragraph letter, if I can pull it up. I have it. It says, I see it. I see it. It concedes that the statute covers the everyone's talking about, about the defendant who goes to the victim's house and is picked up on the doorstep. Greg, you mean the guidelines, not the statute? I'm sorry. Yeah. So, so, so what's, I'll be interested to hear what the government's case is now. Yeah, I mean, with that out of the way, it just seems like clearly counsel failed to raise a meritorious objection and whether or not, you know, the issue, the only issue really remaining is should he have seen it? And I think that given that he was pointed out. No, no, no. There's another issue, an important issue in the case, which is, is there really any prejudice? I mean, it's hard to imagine a district judge more annoyed at a defendant and more anxious to impose a, a tough sentence regardless of the guidelines. Right. I mean, I was going to deal with prejudice separately. I guess I would say the only issue as far as whether he was deficient was whether he would have recognized it. And we think that because it's sort of breadcrumb trail, he was given up to Winstead and Stinson and, you know, basically Kaiser is all about the Seminole Rock deference that was discussed in Winstead. And if you Google, I mean, if you West, Westlaw, Stinson, up pops Kaiser, so he should have seen it now, but I'm happy to address the prejudice. I mean, yeah, just before you get to that, so just one question on deficient performance, which is, I mean, it has to be more than just failing to raise an objection that turns out to be meritorious, right? Because otherwise, otherwise Strickland completely swallows up any obligation to preserve issues. I understand what the court's saying, but I think there, that in this case, there is a foreshadowing or what, I guess they talked about the building blocks and bridges. And also in Winstead, there was a discussion of like, this was out there, this was available and why wouldn't you raise it if it's, if there's something that leads, that creates these building blocks for you. And I would say there were special circumstances here, even in that, that really alerted counsel that he needed to dig in and find this, look at the thing carefully. I mean, it's, you don't even have to look that carefully, honestly, but the fact that the enhancement was a surprise, the government wasn't arguing it. And even after the PSR, I guess at that point, the government did, well, that's a little unclear, but the point is it's a red flag when the government has agreed that something doesn't apply and then it comes up as a surprise and it creates such a large, like, you know, addition to the guideline range. And also I think it's pretty established that these, that this categorical, first of all, defense counsel's ability to understand the guidelines is like a core competency of a defense lawyer, including the categorical approach. And really the fact that it may be counterintuitive sometimes or result in some odd outcomes is almost more the reason that you don't assume anything and that he should have, like, carefully looked at this. And of course, Stinson, I mean, Brown itself says there's no Stinson argument here. All he had to do was put Stinson into Westlaw and he would have seen, oh, look, Stinson's been even narrowed more greatly and, you know, there was already Winstead. So I guess I just think there couldn't be more of a, like, taking them by the hand to find this issue. So even if, you know, you may not, if you're the only first person to ever think of something, maybe, but when it's out there, you know, what is the justification for counsel to not raise it is what I would say. Was this an assigned counsel? I'm not sure if he was retained or appointed. I'm not sure. It was a person outside our office, but I don't know. I can't remember. I think he may have been retained, but I don't want to say that for sure. You don't dispute the general proposition that the error has to be obvious. You're just saying this one was. It was obvious. I mean, it has to be, yeah, obvious, available, like, which case, which case do you think made it obvious? Winstead or Brown? I guess Winstead, but Brown pointed him to Winstead and then Stinson also and Kaiser. I mean, Stinson and Kaiser and Winstead, those three, it's there. And, you know, I have, I agree with you that Winstead was really a major opinion. I'm teasing, of course, since I wrote it. Brilliant opinion. Indeed. Act-breaking. I want to point out too that counsel, you know. More on deficient performance. Okay. I just, yes, go ahead. I am interested in prejudice as well. Okay. I was just, I was just going to point out that counsel, you know, it appears wasn't familiar with the categorical approach at all. So, I mean, that's a little bit of a flavor here of kind of. He wanted to go over to the superior court to check the facts of the case. Correct. So, I mean, it does seem like he was in over his head on this whole issue, but in a little bit of digging would have, would have, you know, brought this up. So, so on the prejudice, I wanted to, if we're turning to that, I guess if the court's referring to the, I mean, obviously when the guidelines change, there is, you know, Martina's, Marina Martinez, I think it is, I'm saying, not getting that correct perhaps, but indicates that normally, of course, we would assume that, that there's a reasonable probability that the sentence would change. And we understand that here. Unless the district court otherwise makes clear, and this is clear as can be. Well, it's, it's not what it doesn't do. It's just general. It's just saying whatever the guidelines are, I would give you this sentence. And if that is enough, then that is. No, no, no, no, no, no. He went further. He went further actually commenting that the prior sentences were inadequate. And then this fellow was really dangerous with his arsenal of guns. I mean, it was pretty, it was dripping with the judge's comments were dripping with concern that this fellow should be put away for a long time. Well, that's true. But I would say that he, the judge was not addressing a specific alternative and saying, if this were, if, if this, then I would still do that. He wasn't even aware of these issues. This is in a situation where defense counsel says, I object to such and such. And the judge says, well, I disagree with you. But even if you're right, then the judge knows what he's considering here. These are issues the judge didn't have. The judge couldn't have considered them and justified the variance from these ranges when he wasn't aware of the arguments that made these ranges appropriate. And I don't, I don't see how. But think of, think of how this issue comes up. The government makes a deal on the assumption that neither adjustment applies and it produces one range. Then the probation office figures out, oh, well, maybe one of the two ranges, one of the two adjustments applies and it produces a different range. And then the judge figures maybe the second adjustment applies and it produces a third range. I mean, that's a pretty structured decision tree of figuring out which of the two options applies. And that leads you to a guideline range. And that's the background against which he says, regardless of whether the adjustments apply, I would come out to this sentence. Well, I don't think he was referring at all to the crime of violence enhancement. He didn't have any, he specifically asked counsel, are you objecting to that? And he said, no. So at that point, that's off the table. I mean, that is not what the judge is thinking about when he's saying that he would vary. I'm not saying he can't vary, but he needs to, under Gall, he needs to, and under Parks, this court's decision in Parks, he needs to explain why the particular range that he's alternatively considering isn't sufficient. And here it was just a lot more general than that. And if we allow, if court can just say that sort of general statement that this person's terrible, and this is the sentence I would pick no matter what, that's no different than not making the judge decide that, calculate the guidelines at all, because it totally insulates the guideline calculations. Right. Aren't those standards, though, the standards that you're stating, the standards we would apply on direct appeal, whereas here we're just trying to consider the question of prejudice and whether there's a from the record here, it's amply clear that there's certainly at least a reasonable probability that he would do so. Well, I think the reasonable probability standard is very favorable for us. It's a very low standard, and it's generally satisfied whenever the range changes, because otherwise what's really happening here is the judge is just saying, I don't care what the guideline range is. But yet he seemed to care what the guideline range was when he thought it was 46 to 57, and he picked the top, the high end of it. And then it's a bit of a, I guess I would say somewhat of a, he must have cared about the range because otherwise it's kind of a strange coincidence that the one number that is the sufficient but not greater than necessary number. If the exceptions in Molina-Martinez don't apply here, what would the district judge have to say in order to, he would have to say that even if your range, even if you're at level 14, or even if you're at level 20, which were the, I guess, you know, pick, say if you were at this range, this, not just that I would do it, but I would do it because that range justifies a deviation of 30 months. You know, if it was really 21 to 27, I would find that a deviation of 30 months was justified because of the following reasons. Or, and also I would, you know, whatever range we're talking about, he needs to think about that extent of the deviation. Do you have any cases where court has posed that type of standard in effective assistance context? I guess parks is not, I'm not sure I have to double check that. I'd have to think about that. I mean, there's many, many cases where this court has said that that's what you have to do. And that's what Gall says you have to do. You can't just say, and this court had a case at the very, before Gall, I think, where a court was saying, I don't even need to calculate the range because I'm telling you right now, this is the sentence that's sufficient but not greater than necessary. And this court said, you can't do that. And then Gall came out and said, that's right. You can't do that because you have to calculate the range as a starting point and an anchor and a benchmark. And then that creates a gravitational pull that you have to pull back against. And you got to know how much gravitational pull you got to overcome to get to the 57 months here. Was it 30 months? He wasn't even considering that the range might have been 21 to 27 because nobody had argued that that had been given up. So I don't know if the court is interested in hearing about the extended magazine at all, but I'm obviously happy to argue that, like to argue that. There's no other questions. It's pretty straightforward from the brief. So thank you, Ms. Wright. Thank you. Questions from my colleagues? Thanks, Ms. Wright. We'll hear from you, Mr. Hahn. Thank you, Your Honor. May it please the court, Brian Hahn for Appellee of the United States. Appellant's trial counsel in this case did not perform deficiently by not challenging the crime of violence enhancement or the high capacity magazine enhancement in the way that appellant claims an appeal. Here's my question to you. Isn't the question of the categorical nature of a past crime fundamental to Supreme Court in our cases? And isn't it rather clear that this counsel appointed or retained didn't even understand this fundamental point of the categorical nature of the prior crimes? I would agree that the categorical approach is the way that it's fairly well settled at this point. No, but I'm saying that this is so fundamental and this counsel obviously didn't understand that, which is sort of astonishing. That comment, I have to go over to the dreadful indication of ignorance. Well, you know, I think that what happened in this case and especially that comment is that, you know, maybe he was speaking out of turn. Maybe he wasn't quite clear at the time, but the court did give him a continuance. There was a continuance in the sentencing, and he was able to at least look into the issue and later say that he wasn't challenging the enhancement. And so I think that if he had looked at- Looked into the issue and decided the categorical approach didn't help him? Yeah. I think that if he had done that- I don't recall anything in the record that indicates that. Well, I don't think that he made any comments after the sentencing. He didn't explain why he wasn't challenging the enhancement after the continuance. He just said that he wasn't. But if he had looked at the case law, of course, he would have found Brown. And Brown says, you know, even though it does leave open this sort of Stinson-Kaiser argument that appellant is raising now, Brown does say that assault with a dangerous weapon is a crime of violence, as is attempted assault with a dangerous weapon is a crime of violence under the sentencing guidelines. And so I think that counsel, you know, even if he was not fully prepared at the time the judge raised for the first time whether or not this enhancement applied, that he was given the He did not consider the point that you concede in the letter you filed yesterday. He did not even consider that. Well, I think we just don't know what he considered or not. That's correct, Your Honor. He did not say that he considered it. And I think that given the posture, you know, this is why this court often remands ineffective assistance of counsel claims if they could be meritorious for hearings in the first instance by the trial court judge. That's why the Rashad standard exists. You want us to remand? No, what I'm saying is that if this court believes that the argument would have been meritorious, then yes. I think we have to remand to inquire into why he didn't raise it. You don't think you have a different argument that this was a debatable enough legal question? I mean, we have Harrington versus Richter and Deust and lots of cases that say it's not deficient performance to make a reasonable mistake. No, so I agree with that, Your Honor. I agree that both the our legal argument has to have been obvious and that it has to be meritorious. And so I think that, you know, in sort of discussions you've been having with Appellant's counsel, I think Winston, in fact, says this, that the error in Winstead that counsel made the legal argument he should have made was an obvious one. And that in this case, this legal argument wasn't an obvious one. And so- That's a fair point because the hypothetical of an attempted threat is almost in some respects metaphysical. I think that's right, Your Honor. And I think, you know, it's important to understand that attempted assault with a dangerous weapon, at least I'm not aware of any cases in D.C. that talk about it as a standalone crime. And generally it comes up as part of plea bargaining that, you know, the defendant and the government agree for the defendant to plead guilty to attempted assault with a dangerous weapon instead of just assault with a dangerous weapon because of the nearest to the benefit of the defendant. It reduces the maximum sentence. It reduces the sentencing guidelines, the voluntary ones in D.C. And so that's usually attempted assault with a dangerous weapon. It's sort of a creation of plea bargaining there. Put aside for a second the question of deficient performance and the question of what the government would charge. So just as a matter of substantive criminal law, do I correctly understand your letter from yesterday to concede that Ms. Wright's hypothetical, the statute does cover that hypothetical. You mean the guidelines? It is attempted. I think I mean the statute. It is attempted ADW under D.C. law when the ex-boyfriend is bringing the gun to wave it around, never intends to commit a battery, and the police stop him. That violates the statute even though, right? So why isn't that enough to make this not a crime of violence under the categorical approach? Because that's one hypothetical nonviolent application. So I think it's because, you know, the threatened use of force encompasses that. I think that when the boyfriend is traveling with a gun intending to threaten his ex-girlfriend or partner or what the case may be, that he, because he has committed a substantial step towards committing an assault with a dangerous weapon, intending to threaten this person with a weapon, and he has the intent to do so, that he is threatening the use of force there. And I'd also argue that, you know, the, in fact, the use of the dangerous weapon here also makes threatening, that threatening behavior a use of force. Because, you know, whether or not you, as this court said in Brown, you know, adding a dangerous weapon is, makes crime inherently violent and materially increases the risk that violence will ensue. This is 892F3 at 403. And because, you know, attempt requires the intent to commit every element of the offense, this is including the use of a dangerous weapon to threaten someone. That also makes this attempted assault with a dangerous weapon a crime of violence. That sounds like how many angels can stand on the head of a pin. I'm not sure that's quite right, Your Honor. And I think that, you know, the plurality of circuits at least agree that that's the case, that attempted crimes of violence such as Hobbs Act robbery and various murder statutes are in fact also crimes of violence, even though, for example, Hobbs Act robbery can be committed by putting the victim in fear or using intimidation. Right. You agree with the Taylor opinion of the Fourth Circuit? I do not, Your Honor. It's a good try, but I think that Walker, St. Hubert, Smith, Dominguez, those cases have the better argument. If we disagree with you on the substantive criminal law point and think that the attempted threat hypothetical does not involve violence, but we also think that the defendant hasn't shown that a case like that would ever be prosecuted, how should we come out? I think that this court could follow the path that the Second Circuit took at McCoy in that case. In that case, you know, as McCoy says, and I think quoting a Supreme Court case that I can't remember at the moment, but we need to look at the categorical approach, not hyper-technically, but realistically, in that if there isn't actually a situation where this ever practically would come to light, that it should still count as a crime of violence under the categorical approach. Does that comment about don't use too much legal imagination, does that go to the scope of the law or what the government is actually prosecuting? I think that goes to the scope of the law, Your Honor. I don't think that's a choice by the government whether or not to prosecute it, and I think that the reason why that is is because McCoy points to whether or not there are any cases that talk about that specific scenario. If there are no further questions, I would just say also that in this case there was no prejudice to the defendant, to appellant here, because as the trial court said, you know, anything less than a sentence that he was imposing would not be sufficient to comply with the purposes of sentencing, and the court made very clear that there was no reasonable probability that appellant would have gotten a different sentence even had the guidelines been different. All right. Ms. Wright, we'll give you two minutes. Thank you. I wanted to sort of make two points. One on the obviousness. I just wanted to say that I think it is as obvious as Winstead because an attempted threatened use of force is not a threatened use of force any more than an attempted burglary was a burglary in James or attempted distribution was a distribution of Winstead. It's exactly the same, so I do think it's equally obvious. I don't know that I want to get too much on the head of the pin, but I do disagree that this threat is in any way metaphysical. It's not solely the creation of flea bargaining, and frankly, even if it is, that's often because the victim is claiming something that the defendant denies about the use of the weapon and whether it was actually used, and a defendant, there's a dispute there, and so the government agrees to, you know, that they're not confident that they can prove ADWs, so they go on the defendant's version of the facts, but it's not solely a creation of flea bargaining. These crimes do happen. I mean, I just yesterday was seeing in the paper, it's not exactly the same, but you can see how this could happen, that somebody came to Washington, and they texted a friend a threat to a member of Congress, and they said they were going to use a weapon to injure this person, and this person texted the friend. The friend texted the person's mother. The person's mother called the police. The police went to the hotel room and got this person and prosecuted him. Now, because he had not actually driven over to do this, it was prosecuted as a threat, but if he had left the hotel room and headed over, and they had stopped him after a substantial step had taken place, he would be prosecuted for attempted ADW, whether he said, I'm going to injure this person or I'm going to injure this person, or I'm going to injure this person, or I'm going to injure this person. So, I just think... Counsel, let me pick up on what Judge Katsas was asking. Although I agree with you that a lawyer who doesn't understand the categorical approach would itself be a bad evidence of insufficient counsel, but even if you did, would it be remotely obvious to think of an attempted threat? Isn't that a rather sophisticated and not obvious hypothetical? I don't think so, because the crime is an attempted ADW, and everyone knows that an ADW is an attempted or threatened use of force. So, when you add that extra layer in there, that defense counsel's mind is instantly going to go to that word attempt and think, wait a minute, how does this help me? This is not as serious as an ADW. Oh, ADW itself only satisfies attempt and threat. So, this is not included. It's really not complicated, particularly... Like I said, it's just as simple as attempting to do the thing in the statute isn't doing the thing in the statute, just as it wasn't in James and in Winstead. And again, on the metaphysical or the likelihood of this happening, I mean, I just think that we're talking about an area that is very different than the Hobbs Act robbery, for example. So, even if Taylor is wrong about the likelihood of that being prosecuted, the ADW is very different because, first of all, it doesn't have that extra element of actually having to get away with the loot. So, in a lot of attempted Hobbs Act robberies, they do everything, all the forces employed, and they just, because there's some victim resist or whatever, they don't get the loot. But in domestic violence also, the people that commit these attempted ADWs, they are so out of their mind that they broadcast. They're not hiding it. They're telling the person that's sitting next to them in the car, I'm going to head over and do this. They tell their roommate. They confess. They say, oh, I wasn't going to do anything. I was just trying to scare her. So, these cases exist, and you can't prosecute them for ADW if they don't get close enough to do it. But I can't imagine why in the world the government wouldn't want to put these people away for attempted ADW. So, unless there's further questions, that's, I'd like to ask the court to remand for resentencing with effective assistance of counsel. Judge Rao, anything else? Judge Silberman? No, no, thank you. That's right. The case is submitted.
judges: Katsas, Rao, Silberman